**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **MONTRELL HOLMES, # B-04248,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs.   ) | Case No. 15-cv-667-JPG |
| ) | |
| **DR V. SHAH,** ) | |
| **WEXFORD HEALTH SOURCES, INC.,** ) | |
| **LAUREN BARRON,** ) | |
| **MS. SHIPLY,** ) | |
| **and CHRISTINE BROWN,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff, currently incarcerated at Illinois River Correctional Center ("IRCC"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983.  His claims arose during his confinement at Pinckneyville Correctional Center ("Pinckneyville").  Plaintiff asserts that Defendants were deliberately indifferent to his serious medical condition.

Plaintiff submitted copies of several grievances and letters along with his complaint; the factual summary below is gleaned from those documents as well as from Plaintiff's statement of claim.  In July 2014, Plaintiff injured his left shoulder when he was hit during activity on the yard at Pinckneyville (Doc. 1, pp. 5, 9, 12).  He did not immediately seek medical care, in hopes that the injury would get better on its own.  However, the pain became worse, and Plaintiff began to have stiffness/freezing of the joint as well as limited movement.

In September 2014, Plaintiff signed up for sick call, and was seen by Defendant Barron on September 27.  He informed her that his shoulder pain might be from a tear in his rotator cuff

area.  She gave Plaintiff Tylenol for the pain.  Plaintiff told her that he had already been taking Tylenol for several weeks and it did not work, as his pain and stiffness had become worse.  However, Defendant Barron stated she could not offer any other medication.  According to her protocol, Plaintiff would have to sign up for sick call three times before he could be referred to the doctor.  Plaintiff asked for a referral to the physician's assistant, but Defendant Barron refused, saying Plaintiff could take the Tylenol or leave it, and that was all she would do (Doc. 1, p. 5).

Plaintiff filed a grievance on September 27 over Defendant Barron's denial of adequate medical care (Doc. 1, pp. 14-15).  Defendant Brown (the Health Care Administrator) responded that Plaintiff could have been referred to the doctor at his first visit to the nurse if it was medically indicated, and the nurse could not give him anything stronger than Tylenol (Doc. 1, p. 14).

Plaintiff wrote letters to Defendant Shiply (Pinckneyville Director of Nurses) on October 5 and November 16, 2014 (Doc. 1, pp. 9-10, 12-13).  Both letters complained that Defendant Barron refused to refer him to the doctor or physician's assistant, despite the fact that Plaintiff's shoulder pain had worsened since his July 2014 injury, and he had been experiencing paralysis and freezing of the shoulder joint.  He stated he had previously faced a similar problem with his right shoulder, which led to surgeries and permanent damage to his right arm.  Defendant Shiply never responded to these letters (Doc. 1, pp. 18-19).

Plaintiff went back to sick call two other times, and in mid-November 2014, a different nurse referred him to see Defendant Dr. Shah.  Defendant Shah believed Plaintiff was suffering from arthritis due to old injuries, but Plaintiff insisted he had never injured his left shoulder before the July 2014 incident.  Defendant Shah prescribed Naproxen and ordered an x-ray, even

though Plaintiff said he had a possible muscle tear in his shoulder. This test was performed, but Plaintiff was never informed of the results while he remained at Pinckneyville. Plaintiff wrote another letter on December 10, 2014, to Defendant Shiply, complaining that he was still in pain and was still waiting for the results of the x-ray taken two weeks ago (Doc. 1, p. 11). He requested her help to get proper medical care from Defendant Shah. He never received any response.

On January 5, 2015, Plaintiff filed another grievance, complaining that Defendant Shah had never called him back to give him the x-ray results, and he had never been given any more pain medication since he used up the single "bubble-pack" of Naproxen from Defendant Shah (Doc. 1, pp. 18-19). He requested treatment for the ongoing pain and stiffening of his left arm.

In mid-January 2015, Plaintiff was transferred to IRCC. He consulted a nurse there, who told him the x-ray showed Plaintiff did not have any broken bones. Plaintiff states that an unnamed medical provider recommended that he have an MRI, but this has not been done.

Plaintiff is still experiencing pain, stiffness, and freezing of his shoulder joint. He has been treated with Ibuprofen, analgesic balm, an injection of Toradol, and had a cortisone injection in April 2015. None of these treatments, however, have relieved his pain (Doc. 1, p. 6).

In addition to the Defendants named above, Plaintiff includes Wexford Health Sources, Inc. ("Wexford") as a Defendant. The Court could find no reference to Defendant Wexford in the statement of claim, other than Plaintiff's statements that Wexford is the employer of the individual Defendants (Doc. 1, pp. 1-2).

As relief, Plaintiff states that he wants an "adequate examination and MRI, and [to] receive treatment that will stop the pain/stiffening of [his] upper left shoulder" (Doc. 1, p. 7). He does not seek money damages, but he wants the Defendants who denied him care to be

"reprimanded for unprofessional conduct/treatment." *Id*.

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id*. At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Based on the allegations of the complaint, the Court finds it convenient to divide the pro se action into the following counts. The parties and the Court will use these designations in all

future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **Count 1:** Eighth Amendment deliberate indifference claim against Defendants Barron and Shah, for delaying and denying treatment for Plaintiff's shoulder injury;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Defendants Shiply and Brown, for failing to ensure that Plaintiff was given proper medical treatment by the Pinckneyville nurse(s) or doctor;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Defendant Wexford Health Sources, Inc., for failure to provide adequate treatment for Plaintiff's shoulder condition.

Accepting Plaintiff's allegations as true, the Court finds that some of Plaintiff's deliberate indifference claims in Counts 1 and 2 survive threshold review under § 1915A. However, he fails to state a claim upon which relief may be granted against Defendant Wexford in Count 3, and that claim shall be dismissed without prejudice.

Most critically for Plaintiff, however, is the fact that the only relief he seeks in this action – which is to be given diagnostic testing and effective treatment for his shoulder problems – cannot be ordered against any of the Pinckneyville Defendants. A request for injunctive relief against officials at a particular prison becomes moot once the prisoner is no longer housed at that institution. *See Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1995). In order for Plaintiff to obtain the injunctive relief he seeks (assuming he is still being denied care), he must file an action against the medical providers at his current prison, in the appropriate district court, subject to the usual requirement that he first exhaust his administrative remedies through the prison grievance procedure. That being said, nothing herein should be construed as an opinion on the potential merits of a deliberate indifference claim against any prison official at IRCC.

Alternatively, if Plaintiff were to amend his complaint in the present action and successfully state a deliberate indifference claim against Defendant Wexford, injunctive relief could conceivably be available against this entity if Plaintiff prevails on his claim, and if Wexford is the contractual medical provider at IRCC.

**Deliberate Indifference to a Serious Medical Condition**

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. "Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, __ F.3d __, No. 12-3084, 2015 WL 4092294, at *3-4 (7th Cir. July 7, 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Further, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The mere fact that a prescribed treatment has proven ineffective does not rise to the level of deliberate indifference. *Duckworth*, 532 F.3d at 680.

Here, Plaintiff describes a shoulder injury that did not improve over time, and in fact grew more painful as the weeks passed. In addition, Plaintiff's shoulder joint became stiff,

"frozen," and restricted his range of motion. Based on these facts, the complaint shows that Plaintiff has a serious medical condition which satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the various Defendants acted or failed to act with deliberate indifference to a known risk of serious harm from Plaintiff's condition.

**Count 1 – Defendants Barron and Shah**

Defendant Barron was the first medical professional from whom Plaintiff sought treatment. While she may not have had authority to give Plaintiff stronger pain medication at that time, she could have taken steps to allow Plaintiff to see a provider with the power to prescribe medication or other treatment to ease his pain and joint stiffness, as well as to diagnose the cause of his problems. Her decision not to do so prolonged Plaintiff's suffering. At the pleading stage, Plaintiff has sufficiently stated a deliberate indifference claim against Defendant Barron. Further factual development may show that her decision was based on sound medical judgment or was mere malpractice or negligence, but the Court cannot make such a determination at this juncture.

Once Plaintiff finally saw Defendant Dr. Shah in mid-November 2014, the doctor gave him a stronger pain medication and ordered an x-ray. While this treatment does not evince deliberate indifference, Defendant Shah took no further steps to address Plaintiff's continuing severe pain over the next several weeks. Plaintiff's pain medication ran out, and he was never informed of the x-ray results. No other diagnostic efforts were undertaken to investigate the cause of plaintiff's pain or joint impairment through mid-January 2015, while Plaintiff remained under the care of Defendant Shah. Based on these facts, it would be inappropriate to dismiss the deliberate indifference claim against Defendant Shah at this time.

Plaintiff's deliberate indifference claims in **Count 1** against Defendants Barron and Shah

shall thus proceed for further review.

**Count 2 – Defendants Shiply and Brown**

Plaintiff wrote two letters to Defendant Shiply (Director of Nurses – "DON") asking to be referred to the doctor or physician's assistant, in which he informed her of his condition and the worsening of his symptoms since his July 2014 injury. Approximately a month and a half passed between the dates of the two letters, during which Plaintiff appears to have received no further care. Defendant Shiply never responded to either letter; Plaintiff ultimately saw the doctor (Defendant Shah) only after a different nurse referred him. Plaintiff then wrote Defendant Shiply again on December 10, 2014, stating he was still in pain, and asking for her help to get his x-ray results and be given adequate care from Defendant Shah. Again, Plaintiff states he got no response from Defendant Shiply.[1]

Construing Plaintiff's complaint liberally, these three letters could have given Defendant Shiply sufficient knowledge of Plaintiff's serious medical condition, and informed her that he was at risk of serious harm due to the delay and lack of adequate treatment rendered by Defendants Barron and Shah. If so, Plaintiff may be able to maintain a deliberate indifference claim against Defendant Shiply for deliberately disregarding the risk to his health. *See Perez v. Fenoglio*, __ F.3d __, No. 12-3084, 2015 WL 4092294, at *8-9 (7th Cir. July 7, 2015). The claim against Defendant Shiply is therefore not subject to dismissal at this time.

In contrast, Defendant Brown's involvement in Plaintiff's case appears to be more limited. Plaintiff's statement of claim makes no mention of any letters or other requests he directed to her. Her name appears on two of his documents, where she was asked to respond to

---

[1] There is a counselor's response noted on Plaintiff's January 5, 2015, grievance, which states: "Per DON Shipley, he will be put on the next available MD line for a follow-up for shoulder pain & x-ray." (Doc. 1, p. 18). It is signed by Counselor K. Melvin, and dated March 20, 2015 – by which time Plaintiff had been transferred to IRCC.

Plaintiff's September 27, 2014, grievance against Defendant Barron for refusing to refer him to the doctor or physician's assistant (Doc. 1, pp. 14-15). She explained the nurse's role and limitations, and stated that Plaintiff should "go back through NSC [Nurse Sick Call]" if he continued to have problems.

Defendant Brown's role in responding to a single grievance (which she may or may not have read) does not show that she was made aware of the seriousness of Plaintiff's condition or that he faced a significant risk to his health. The complaint thus does not support a claim against her for deliberate indifference to a serious medical need. Further, her position as Health Care Unit Administrator does not make her liable for violations committed by those under her supervision, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (a defendant must be "personally responsible for the deprivation of a constitutional right" in order to be held liable).

To summarize, Plaintiff may proceed with his deliberate indifference claim in **Count 2** against Defendant Shiply. However, he fails to state a claim upon which relief may be granted against Defendant Brown, and she shall be dismissed from the action without prejudice.

**Dismissal of Count 3 – Defendant Wexford Medical Sources, Inc.**

Defendant Wexford is a corporation that employs individual Defendants Shah, Barron, Shiply, and Brown, and provides medical care at the prison. However, it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.,* 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action). The complaint contains no factual allegations to suggest

that any individual Defendant acted or failed to act as a result of an official policy espoused by Defendant Wexford.  **Count 3** and Defendant Wexford shall therefore be dismissed without prejudice.

**<u>Amendment of the Complaint</u>**

Plaintiff's complaint, at this stage, sufficiently states a deliberate indifference claim upon which relief may be granted against Defendants Barron and Shah (Count 1), and against Defendant Shiply (Count 2).  However, the complaint contains no request for relief against these Defendants that is within this Court's power to grant, should Plaintiff prevail.  Therefore, if Plaintiff wishes to proceed with his claims against these three Defendants, he may wish to amend his complaint.  An amended complaint will also provide Plaintiff an opportunity to re-plead the claims dismissed herein without prejudice, assuming that facts exist which would support a colorable claim against the Defendants involved.  Again, this Court's power to order injunctive relief is limited, because Plaintiff is no longer incarcerated in the prison where his claims arose, and indeed is now housed within the jurisdiction of the Central District of Illinois.

Plaintiff should take note that if he submits an amended complaint, it will supersede and replace the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, an amended complaint must stand on its own, without reference to any other pleading.  An amended complaint that does not conform to these requirements may be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with his amended complaint.

If Plaintiff elects to submit an amended complaint, it is strongly recommended that he use the form designed for use in this District for civil rights actions.  He should label the pleading

"First Amended Complaint" and include Case Number 15-cv-667-JPG. The amended complaint shall present each claim in a separate count as designated by the Court above. In each count, Plaintiff shall specify, *by name*,[2] each Defendant alleged to be liable under the count, as well as the actions alleged to have been taken by that Defendant. New individual Defendants may be added if they were personally involved in the constitutional violations. Plaintiff should attempt to include the facts of his case in chronological order, inserting Defendants' names where necessary to identify the actors and the dates of any material acts or omissions.

**Pending Motions**

Plaintiff's motion for service of process at government expense (Doc. 3) is **GRANTED IN PART AND DENIED IN PART.** Service shall be ordered below on those Defendants who remain in the action. No service shall be made on the dismissed Defendants.

Plaintiff's motion for recruitment of counsel (Doc. 4) shall be referred to the United States Magistrate Judge for further consideration.

**Disposition**

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendants **WEXFORD HEALTH SOURCES, INC.** and **BROWN** are **DISMISSED** from this action without prejudice.

In order to assist Plaintiff in preparing an amended complaint, should he decide to submit one, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

The Clerk of Court shall prepare for Defendants **SHAH, BARRON,** and **SHIPLY**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the

---

[2] Plaintiff may designate an unknown Defendant as John or Jane Doe, but should include descriptive information (such as job title, shift worked, or location) to assist in the person's eventual identification.

complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 4).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 20, 2015**

*s/J.Phil Gilbert*
United States District Judge