**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MONTRELL HOLMES, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. **15-cv-667-SCW** |
| ) | |
| DR. V. SHAH, LAUREN BARRON, and ) | |
| MS. SHIPLY, ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I. INTRODUCTION

*Pro se* Plaintiff Montrell Holmes brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Plaintiff, an inmate incarcerated by the Illinois Department of Corrections, alleges Defendants violated his Eighth Amendment rights by being deliberately indifferent to a serious medical need posed by shoulder pain Plaintiff suffered while an inmate at Pinckneyville Correctional Center. This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 66). Plaintiff has filed a response, and the Motion is ripe for disposition. Since no reasonable juror could find that Defendants were deliberately indifferent to Plaintiff's serious medical needs, Defendants' Motion is **GRANTED**.

### II. BACKGROUND

Plaintiff Holmes injured his left shoulder in mid-July 2014. (Doc. 67-1, p. 17).

After being seen for unrelated right arm pain in July 2014, Plaintiff next returned to the healthcare unit on September 27, 2014 complaining of left shoulder pain. (Doc. 67-2, p. 1, 3). He was seen by Defendant Barron, a nurse, and after describing his pain as a seven or eight out of ten, he was provided acetaminophen. (*Id.* at 3). According to Plaintiff, Nurse Barron refused to refer him to a physician, stating that she could not according to her protocols. (Doc. 70, p. 1). After this visit, Plaintiff wrote a grievance, and a response was provided by Healthcare Unit Administrator Brown ("HCUA"). HCUA Brown stated that Plaintiff "could be referred at the first clinic if medically indicated. The nurse was telling [him] this was not something new and he should try Tylenol first to see if it helps. The nurse can't give him anything stronger….If he is still having problems then he will need to go back through NSC." (Doc. 70-1, p. 1). Apparently unsatisfied with this response, on October 5, 2014, Plaintiff wrote a letter to Director of Nursing, Defendant Shipley. Plaintiff complained about his visit with Nurse Barron and indicated he was beginning to experience slight paralysis in his shoulder that his pain was intensifying. (*Id.* at 26 – 27).

Plaintiff was next seen by a non-party nurse on October 29, 2014 due to complaints of his shoulder hurting often. (Doc. 67-2, p. 5). He also complained of his shoulder "freezing up" at certain positions and was provided Motrin and alternating cold and hot packs. (*Id.*). After refusing to be seen or not being present in his cell for a November 5, 2014 sick call, he was seen by another non-party nurse on November 10th. (*Id.* at 7, 9, 11). Plaintiff was referred to a physician. (*Id.* at 11).

Plaintiff was seen by Defendant Dr. Shah on November 13, 2014 for complaints of his shoulder freezing in certain positions. (Doc. 67-4, p. 2). Dr. Shah ordered x-rays, prescribed Naproxen, and ordered a follow-up visit in two weeks. (*Id.* at 2 – 3). Plaintiff's x-rays were taken on November 21, 2014 and they showed no acute bony abnormality. (Doc. 67-4, p. 3; Doc. 67-2, p. 15).

On November 16, 2014, Plaintiff sent another letter to Defendant Shipley which was nearly identical to the first letter. (Doc. 70-1, p. 24 – 25). He sent a third letter on December 10, 2014, stating that he was still in pain and was waiting on his x-ray results. (*Id.* at 28). Plaintiff sought assistance in obtaining proper and adequate care from Dr. Shah. (*Id.*). He sent a final letter to Defendant Shipley on January 5, 2015. In this letter Plaintiff indicated that he was still in pain and had yet to receive the results from his x-ray. (*Id.* at 29). Though he stated that he had signed up for sick call and had seen Dr. Shah, he does not mention attempting to sign up for sick call after his visit with Dr. Shah. (*Id.*). Plaintiff asked Defendant Shipley to "talk to Dr. V. Shah about the course of [illegible] he's giving me and if possible receive treatment that will stop pain I'm having." (*Id.*).

On January 14, 2015, Plaintiff was transferred to Illinois River Correctional Center ("Illinois River"). (Doc. 67-4, p. 3). Prior to being transferred, Plaintiff did not follow-up with Dr. Shah and did not find out the results of his x-ray. (*Id*; Doc. 70, p. 1). Dr. Shah, however, is not responsible for the scheduling of patient appointments, and if Plaintiff was not called to the healthcare unit for his follow-up, according to Dr. Shah,

he should have filed a sick call request.  (Doc. 67-4, p. 3).  After Plaintiff was transferred, he received further treatment, including Toradol injections.  (*See* Doc. 67-3).

## III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions.  The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**.  The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings, affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact.  ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)**.  A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)**. ***Accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party.  ***Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving

conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

## IV.   ANALYSIS

Plaintiff's claims against all three defendants arise under the Eighth Amendment. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005) (quoting** *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** *Accord Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.").** A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Holloway v. Delaware Cnty. Sheriff*, **700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards");** *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).** Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, **700 F.3d at 1073-74**. A doctor may provide the care he feels

is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* **at 1073**.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the** *Eighth Amendment* **requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm.")** **(internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, **414 F.3d at 653.** The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).** Deliberate indifference is not negligence; rather it is more akin

to intentional wrongdoing.  *McGee v. Adams*, **721 F.3d 474, 480 (7th Cir. 2013).**  The standard is criminal recklessness, and even gross negligence will not meet this standard.  *Id.* **at 481**.

The Court first addresses Plaintiff's claims against Defendant Barron.  No reasonable juror could find that Nurse Barron acted with deliberate indifference toward Plaintiff.  She examined and treated Plaintiff, providing him pain killers for his complaints of shoulder pain.  This visit was Plaintiff's first visit for his left shoulder pain, and there is nothing to indicate that Nurse Barron's failure to refer Plaintiff to a physician at that time was inappropriate.  In addition, HCUA Brown's response to Plaintiff's grievance fails to create any inference of deliberate indifference on Nurse Barron's part.  Rather, if anything, the response supports Defendant Barron's position.

Plaintiff argues that HCUA Brown's statement that he could be referred to a physician if "medically indicated" demonstrates that Nurse Barron could have sent him to a physician but that Barron "chose" not to medically indicate him.  This position is an unreasonable reading of Brown's grievance response, however.  It is clear that a reasonable reader of HCUA Brown's response would understand by "medically indicated," she meant that Plaintiff could be referred to a physician if his medical condition warranted such a referral.  It is unreasonable to read the response as stating that Nurse Barron had the discretion to "medically indicate" Plaintiff for a physician referral.  For instance, Brown goes on to indicate that Plaintiff should first try the Tylenol that was given to him to see if that helps, and that if he continues to have

problems he may send a request for nurse sick call. Summary judgment is appropriate as to Defendant Barron.

Plaintiff also cannot recover against Defendant Shah. Dr. Shah saw Plaintiff on only one occasion. During that visit, he prescribed Naproxen and ordered x-rays and a follow-up visit. The fact that Dr. Shah may have refused to refer Plaintiff to collegial is not indicative of deliberate indifference. Plaintiff is entitled only to adequate care, not to demand specific care of his choosing. *See Holloway*, **700 F.3d at 1074**. There is nothing to indicate that the course of treatment taken by Dr. Shah was the result of anything other than his professional judgment.

In addition, from the record, the fact that Dr. Shah did not see Plaintiff again is not the doctor's fault. Dr. Shah indicates that he is not responsible for scheduling patient visits, and there is no evidence indicating otherwise. Summary judgment is also appropriate as to Defendant Shah.[1]

Finally, Plaintiff is unable to recover against Defendant Shipley. Shipley's failure to respond to the first two letters, dated October 5th and November 16th, does not violate the Eighth Amendment as there was no underlying deliberate indifference by Nurse Barron. Plaintiff's December and January letters, however, raise a different issue. By the time Plaintiff sent those letters, he was supposed to have already been seen by

---

[1] As part of his response, Plaintiff also argues that certain Wexford policies demonstrate that Shah and Barron were deliberately indifferent. Included with Plaintiff's response were pages from what appears to be a medical encyclopedia or related reference book and two or three pages that may be Wexford policies. There is no real explanation as to the meaning of their contents, however. The Court does not consider these documents, and even if it did, it does not see anything from the face of the documents that would suggest that either Shah or Barron were deliberately indifferent.

Dr. Shah for a follow-up after his x-ray. The question is whether Defendant Shipley's failure to respond Plaintiff's letters by taking any action, including assisting him in ensuring he received another appointment with Dr. Shah is deliberate indifference. *See Perez v. Fenoglio*, **792 F.3d 768, 781 (7th Cir. 2015)**.

The answer is "no," for two reasons. First, to the extent that Plaintiff complained about Dr. Shah's course of treatment in the December and January letters, again, Plaintiff's mere disagreement with a course of treatment is not indicative of deliberate indifference. Additionally, it is not at all clear from the record that Defendant Shipley as Director of Nursing would have the authority to intervene as to Plaintiff's course of treatment as chosen by Dr. Shah.

Second, even as to Defendant Shipley's failure to secure Plaintiff a follow-up appointment with Dr. Shah, Plaintiff's claims also fail due to Shipley's status as Director of Nursing. It cannot be that an inmate can attach potential liability to every prison official to whom he sends a letter, and this notion is particularly true when it comes to individuals higher-up in the administrative ranks. In *Burks v. Raemisch*, the Seventh Circuit stated

> [The] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor…and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter, the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks v. Raemisch*, **555 F.3d 592, 595 (7th Cir. 2009)**.

In regards to certain tasks, the same reasoning applies to the *Director* of Nursing. While it may be that with regard to some issues not established in the Court's Order today, an inmate may hold the Director of Nursing liable for his or her failure to act in response to inmate correspondence, the Court holds that it is not deliberate indifference for the Director of Nursing to not take action for issues relating to scheduling of inmates for sick call, particularly where the inmate is able to seek nurse sick call on his own accord. Like the higher-level administrators referenced in *Burks*, there are some tasks the Director of Nursing should be able to delegate to subordinates, and scheduling inmates to be seen at sick call is one of them. Moreover, from the record, it appears that the scheduling of inmates is more in the purview of HCUA Brown's duties. Defendant Shipley cannot be held liable for Plaintiff's failure to see Dr. Shah again prior to his transfer. Plaintiff could have requested nurse sick call, and there is no indication in the letters that he did so.

V.   CONCLUSION

As Plaintiff cannot demonstrate deliberate indifference against Defendants, Defendants' Motion for Summary Judgment (Doc. 66) is **GRANTED**. Plaintiff's claims against Defendants Barron, Shah, and Shipley are **DISMISSED with prejudice.** The Clerk of Court is **DIRECTED** to enter judgment for Defendants and against Plaintiff and close the case.

**IT IS SO ORDERED**.
DATED: 3/27/2018

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge